IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>the States of CALIFORNIA, COLORADO,<br>DELAWARE, FLORIDA, GEORGIA,<br>HAWAII, ILLINOIS, INDIANA, IOWA,<br>LOUISIANA, MARYLAND, MICHIGAN,<br>MINNESOTA, MONTANA, NEVADA,<br>NEW JERSEY, NEW MEXICO, NEW<br>YORK, NORTH CAROLINA,<br>OKLAHOMA, RHODE ISLAND,<br>TENNESSEE, TEXAS, VERMONT, and<br>WASHINGTON, the Commonwealths of<br>MASSACHUSETTS and VIRGINIA, and<br>THE DISTRICT OF COLUMBIA,<br><br>      Plaintiffs,<br><br>*ex rel.* PATRICIA CROCANO,<br><br>      Plaintiff-Relator,<br><br>v.<br><br>TRIVIDIA HEALTH, INC.,<br><br>      Defendant. | C.A. No. 0:22-60160-RAR<br><br><br><br><br><br><br><br><br><br><br>**RELATOR'S MOTION<br>FOR LEAVE TO SERVE<br>SUBPOENAS *DUCES TECUM*** |

Plaintiff-Relator Patricia Crocano (Relator) hereby moves the Court under Rule 26(d)(1) of the Federal Rules of Civil Procedure for leave to serve subpoenas *duces tecum* on the Plaintiff States to obtain data compiled from the states' respective Medicaid programs concerning payments to purchase blood glucose test strips and kits that are the subject of this action under the False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq.* and analogous state false claims acts.

**I. Introduction**

The Plaintiff States and Defendant Trividia Health, Inc. (Trividia) all know the allegedly adulterated and misbranded glucose test strips placed into the stream of commerce were, in fact,

reimbursed by the Plaintiff States' respective Medicaid programs. They all know Medicaid programs paid for Trividia test strips at the same time Trividia knew it was distributing a defective product into the marketplace.[1]

Even though these facts are known to the Plaintiff States, Relator needs a subpoena to obtain granular details from the Plaintiff States' internal records. The documents Relator seeks have already been compiled by the Plaintiff States who are the real parties in interest regarding their respective claims in this action. The Plaintiff States coordinate through the National Association of Medicaid Fraud Control Units (NAMFCU). NAMFCU is comprised of representatives from each state's Medicaid Fraud Control Unit. It is jointly funded by the states and the federal government. When a relator files a FCA complaint alleging a multi-state Medicaid fraud, as in this case, NAMFCU assigns a team to coordinate the interests of the Plaintiff States. This can involve reviewing state Medicaid data to determine whether the Plaintiff States' internal data corroborates a relator's allegations.

In this case, NAMFCU is not authorized to disclose the information Relator seeks. Only the Plaintiff States can do that, but they are governmental entities operating under rules requiring sensitive records be disclosed pursuant to legal process. Thus, Relator needs subpoenas. All Plaintiff States were served the motion for leave to file a subpoena directed at them when the motion was first filed before the transfer to this Court. Certificate of Service (attached as **Exhibit A**). No Plaintiff State objected to the proposed subpoena. One state—Washington—provided records voluntarily. Those records show more than 350,000 claims for resulting in more than $15 million paid by the Washington's Medicaid program during the relevant period.

---

[1] Trividia appears to deny allegations that its glucose test strips were adulterated and misbranded and that it had actual knowledge of the alleged defects, but not that Plaintiff States' respective Medicaid programs reimbursed purchases of test strips subject to these contested allegations.

Granting this motion and authorizing Relator to subpoena from the Plaintiff States all post-adjudication Medicaid claims data for the period of January 1, 2013, to June 30, 2016, for glucose test strips bearing the National Drug Code (NDC) Nos. 56151-1030-25, 56151-1030-50, 56151-1030-01, 56151-0850-50, 56151-0850-01 or 56151-1813-50, and glucose test meters bearing the NDC Nos. 6151-1240-01, 6151-1340-01, and 56151-0888-80, will help keep the parties and the Court from spinning their wheels at the start line of this litigation in unnecessary argument over whether facts known to all parties have been pleaded with sufficient particularity. The gravamen of this case is whether Trividia knowingly sold adulterated or misbranded glucose test strips, not whether Medicaid pays for glucose test strips (it does).

## II.   Background

Federal health insurance programs like Medicare and state health insurance programs like Medicaid spend hundreds of millions of dollars each year on products allowing diabetic patients to monitor their glucose levels and manage their diabetes, a chronic and potentially life-threatening illness. Beginning sometime in 2013 or 2014, a defect in a manufacturing device failed to properly seal Trividia's TRUEtest test-strip vials, which caused Trividia to manufacture defective strips that would not produce an accurate glucose reading due to premature air exposure—a contamination defect known in the industry as "Black Chemistry." Am Compl. ¶¶ 88–121, ECF No. 43. Trividia executives had actual knowledge of this manufacturing defect, in part because of a substantial number of complaints received by the company's Customer Care Department. *See id.* ¶¶ 119–36, 183–87. Instead of promptly reporting the defective product to the U.S. Food and Drug Administration and issuing a recall, Trividia concealed the defects by miscoding and closing customer complaints without notifying regulators or conducting a proper investigation. *Id.* ¶¶ 139–76. On June 28, 2016, Trividia finally initiated a recall, but by then, more than 5.5 million units

of the defective, misbranded product had been placed into the stream of commerce. *See id.* ¶¶ 233–35. By then, severe adverse health outcomes were already known to the company, including the deaths of two unborn children. *Id.* ¶¶ 189–97, 213–19.

On February 2, 2017, Relator filed this action. Compl., ECF No. 1. The FCA requires a *qui tam* relator to file the complaint under seal and not to serve it on the defendant until the court orders service. 31 U.S.C. § 3730(b)(2). On September 10, 2021, the United States declined to intervene and notified the transferor court that the Plaintiff States were also declining to intervene. ECF No. 40. On September 13, 2021, the transferor court unsealed the case. ECF No. 41. On November 18, 2021, Relator filed an Amended Complaint and a motion for leave to issue subpoenas *duces tecum*. ECF Nos. 43 & 44. On January 3, 2022, the parties stipulated to transfer from the District of South Carolina to the Southern District of Florida, and the transferor court transferred the case to this Court on January 20, 2022. ECF Nos. 63 & 64. In the stipulation, the parties agreed to refile all previously pending motions, and this re-filed motion followed.

### III. <u>Legal Standard</u>

"A party may not seek discovery from any source" before the Rule 26(f) conference, unless "authorized by . . . court order." Fed. R. Civ. P. 26(d)(1). "Federal courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes 'good cause' for such discovery." *Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015); see also *FTC v. On Point Glob. LLC*, No. 19-25046-CIV, 2020 WL 32996, at *1 (S.D. Fla. Jan. 2, 2020) ("The Eleventh Circuit has not adopted a standard for allowing expedited discovery. However, many district courts within the Eleventh Circuit have expressly used a general good cause standard when confronted with expedited discovery requests." (collecting cases)). "Good

cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

> Factors the Court considers in deciding whether a party has shown good cause include: (1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made.

*St. Jude Med. S.C., Inc. v. Biosense Webster Inc.*, No. 6:13-CV-333-ORL-28, 2013 WL 1502184, at *1 (M.D. Fla. Apr. 12, 2013) (citing *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Authority*, 234 F.R.D. 4, 6 (D.D.C. 2006)); see also *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (explaining "Courts are not limited to these factors, but the factors provide 'guidelines for the exercise of the Court's discretion'").

### IV.     Argument

The Medicaid claims data Relator seeks ties post-adjudication reimbursement to NDC codes for Trividia's TRUEtest test strips and the TRUEresult testing meter used with those strips during the period when Trividia was distributing defective product into the marketplace. When considering whether Relator has shown good cause to obtain this information before a Rule 26(f) conference, there is no preliminary injunction motion, but all other factors weigh heavily in favor of granting Relator's motion. The Court therefore should grant Relator's motion.

***First***, no motion for a preliminary injunction is pending or anticipated, so this factor does not weigh in favor of Relator's motion. Courts often permit expedited discovery when the request is narrowly tailored to gathering evidence relevant to a pending motion for a preliminary injunction. *E.g.*, *Merial LLC v. Fidopharm, Inc.*, No. 1:13-CV-1207-SCJ, 2013 WL 12072140, at *2 (N.D. Ga. May 22, 2013); *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. CIV.A. 11-465-LPS, 2011 WL 4478477, at *8 (D. Del. Sept. 26, 2011); *Wachovia Secs., L.L.C. v. Stanton*, 571 F. Supp.

2d 1014 (N.D. Iowa 2008); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. CIV.A. 03-484-KAJ, 2004 WL 406351, at *1 (D. Del. Mar. 3, 2004). The preliminary injunction factor is not relevant in this case because Relator does not allege any ongoing harm that could justify interim relief.

***Second***, the breadth of the proposed discovery is narrow, so this factor weighs heavily in favor of Relator's motion. Relator seeks a specific set of claims data concerning specific Trividia products over a discrete period, which the Plaintiff States have already compiled in investigating Relator's allegations against Trividia. No one would be required to compile data not already compiled. In its previous opposition, Trividia disputed this assertion, contending that "requiring the non-party States to compile three years' worth of claims data for two different Trividia projects would require the States to waste unnecessary time and resources gathering data that Relator has had four years to gather." ECF No. 55 at 7. But the Plaintiff States were all served with the prior motion and informed of it through communication with the leader of the Plaintiff States' NAMFCU liaison team. While each State issued a subpoena will need to issue its own response, it is believed the data has already been compiled with the NAMFCU team and individual States could simply authorize its release. There is nothing extraordinary about the breath of the proposed subpoenas. If the data Relator sought were not already compiled or would otherwise be a burden to produce, the attorneys for the Plaintiff States would have said so.

Trividia also previously complained that "Relator has had four years to investigate her claims" and "had an obligation to identify evidence supporting all essential elements of a [FCA] violation prior to filing a Complaint accusing Trividia of fraud." ECF No. 55 at 1–2. Of course, it is the government, not Relator, who had four years to investigate the claims Relator brought to the government's attention. Relator is a former employee in Trividia's customer care and post-

market compliance departments who learned Trividia had a manufacturing defect that rendered glucose test strips defective and then concealed that defect while it continued distributing the defective product to the detriment of patients. Am. Compl. ¶¶ 80–243. Relator's allegations, based on her first-hand knowledge, are specific enough to apprise Trividia of the who, what, where, when, and how of the scheme and what was gained therein. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (observing "[a] sufficient level of factual support" under Rule (9(b) exists when the pleading gives the "who, what, when, where, and how" of the fraud).

What Relator did not know (either when employed or when this action was filed), is the precise number and value of claims paid by state Medicaid programs after the adulterated and misbranded product left Trividia's warehouse, entered the stream of commerce, was stocked on pharmacy shelves, purchased by an unwitting public, and (eventually) reimbursed by Medicaid. Trividia's own motion to dismiss is instructive on this point:

> Importantly, Trividia is a manufacturer – not a – not a reseller – of strips and meters. *Id.*, ¶ 7. As a manufacturer, Trividia sells its products at a significantly reduced price than what the government reimburses to retailers and others that resell Trividia's strips. *See, e.g., id.*, ¶ 10. Thus, because Trividia does not sell to the end user, Trividia never submits a claim with any health insurance program – public or private. It is the end user and not Trividia that submits the claim for reimbursement. That end user is at least one step, if not more, removed from Trividia. And that end user could be reimbursed for the strips by a private or public insurer, and Trividia has no indication at the time it ships its product.

ECF No. 53-1 at 4. The parties agree this is not a case where the defendant directly submitted false claims for payment. Instead, Trividia caused the submission of false claims by placing the worthless product into the stream of commerce knowing government healthcare programs would comprise the bulk of payors. There was nothing Relator (or any other potential whistleblower) could do to "investigate" this aspect of the case and no insider at Trividia was privy to this specific state-level claims information. Instead, 31 U.S.C. § 3730(b) obligates the government to

7

investigate Relator's allegations, which it did, and during that investigation, the data Relator seeks was compiled by the Plaintiff States. Trividia asks the Court to pretend it does not exist and to deny Relator permission to obtain it on that basis. Trividia's position is illogical.

Regardless, Trividia lacks standing to object to a subpoena *duces tecum* issued from one Plaintiff seeking relevant information from another, unobjecting Plaintiff based on burden to the target of the subpoena. *See, e.g.*, *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("Defendants do not have standing to quash the subpoenas on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds."). Relator submits it also would be illogical to hold Trividia has standing to object to a motion for leave to issue a subpoena based on burden on the subpoenaed party when it would not be able to object to the subpoena on that basis once issued.

***Third***, the reason Relator needs the subpoenas is to prevent state-specific administrative requirements for the disclosure of information from potentially blocking the Court from reaching serious allegations of precisely the type of fraud the FCA was intended to reach, so this factor weighs heavily in favor of Relator's motion. The FCA is designed to reach "all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert–White Co.*, 390 U.S. 228, 232 (1968)). Still, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b)). "Rule 9(b) prevents '[s]peculative suits against innocent actors for fraud,'" by requiring allegations of fraud to "must include facts as to time, place, and substance of the defendant's alleged fraud." *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (quoting *U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 568–69 (11th Cir. 1994)).

Here, Relator alleges Trividia caused the submission of false claims by placing defective test strips into the stream of commerce knowing government healthcare programs would comprise the bulk of payors. Courts applying the cause-to-be-presented clause of the FCA have looked to the doctrine of proximate cause to explain when there is a sufficient nexus between the defendant's conduct and the submission of a false claim. *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020). Under this standard, a defendant's conduct may be found to have caused the submission of a claim for reimbursement if it was (1) a substantial factor in inducing the submission of claims for reimbursement, and (2) if the submissions were "reasonably foreseeable or anticipated as a natural consequence of defendants' conduct." *Id.* The Amended Complaint offers a detailed, first-hand account from Relator about how she discovered the manufacturing defect, that Trividia had actual knowledge of it, and that the company still chose to place the product into the stream of commerce where it enjoyed a considerable share of the test-strip market. Relator also makes specific allegations that TRUEtest was one of Florida Medicaid's covered products and details a serious incident involving a California Medicaid patient. Am. Compl. ¶¶ 38, 190–99. Trividia undoubtedly will deny these allegations, but they clearly "include facts as to time, place, and substance of the defendant's alleged fraud." *Cf. Clausen*, 290 F.3d at 1308. This is not a "speculative" suit alleging "guilt by association." *Cf. Id.*

Nevertheless, Trividia argued in its motion to dismiss (and when it is refiled, will again argue) that, in the absence of some further information, the Court should assume no Plaintiff State paid for its product despite knowing that assumption to be untrue, and thus never reach the crux of case—whether Trividia whether knowingly sold defective test strips. *See* ECF No. 55 at 8–11. Trividia could never affirmatively present that assumption to the Court as a factual allegation or averment consistent with Rule 11. Instead, it presents it as a legal fiction made possible by a

9

narrow technicality in which most states require legal process to give Relator access to claims data they compiled specifically in response to Relator's allegations. The requested subpoenas would cure this problem without imposing any burden on Trividia.

***Fourth***, the requested subpoenas impose no burden whatsoever on Trividia, so this factor weighs heavily in favor of granting Relator's request.

***Fifth***, this request does not seek ***any*** departure from the ordinary litigation procedure under Rule 26(d), so this factor weighs heavily in favor of granting Relator's request. Rule 26(d) authorizes discovery once the parties have conferred as required by Rule 26(f). Unless otherwise ordered by the Court, the Rule 26(f) conference must occur at least 21 days before a scheduling order is due under Rule 16(b), which, in turn, is due "the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared." Fed. R. Civ. P. 16(b). Trividia was served on November 30, 2021 (ECF No. 46), and counsel appeared for Trividia on December 21, 2021 (ECF Nos. 49–51). Thus, in the absence of contrary court orders, discovery in this case would have begun on January 31, 2022—***before*** Relator refiled this motion for leave to issue subpoenas. The requested discovery would be expedited only to the extent that the Rule 26(f) conference has been delayed.

## V.     Conclusion

For the foregoing reasons, the Court should grant Relator's motion for leave to issue subpoenas *duces tecum* to the Plaintiff States for all post-adjudication Medicaid claims data for the period of January 1, 2013, to June 30, 2016, for glucose test strips bearing the NDC Codes 56151-1030-25, 56151-1030-50, 56151-1030-01, 56151-0850-50, 56151-0850-01 or 56151-1813-50, and glucose test meters bearing the NDC Codes 6151-1240-01, 6151-1340-01, and 56151-0888-80.

Respectfully submitted by,

*s/ Whitney M. Untiedt*
**FREIDIN BROWN P.A.**
Philip Freidin
FL Bar No: 118519
pf@fblawyers.net
Whitney M. Untiedt
FL Bar No: 15819
wmu@fblawyers.net
One Biscayne Tower
2 South Biscayne Boulevard, Ste. 3100
Miami, Florida 33131
Tel: 305-371-3666
Fax: 305-371-6725

**RICHARD A. HARPOOTLIAN, P.A.**
Richard A. Harpootlian (*pro hac vice*)
Phillip D. Barber (*pro hac vice*)
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

**GUTTMAN, BUSCHNER
& BROOKS PLLC**
Reuben A. Guttman (*pro hac vice*)
rguttman@gbblegal.com
Traci L. Buschner (*pro hac vice*)
tbuschner@gbblegal.com
Elizabeth Shofner (*pro hac vice*)
2000 P Street, N.W., Suite 300
Washington, DC 20036
Tel: 202-800-3001
Fax: 202-827-0041

***Attorneys for Relator***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February, 2022, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

By: */s/ Whitney M. Untiedt*
**Whitney Untiedt, Esq.**